# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# ALBANY DIVISION

| | |
|---|---|
| JANICE JENKINS, TYRONE SUTTON, JR., : : : Plaintiffs, : : v. : : DOUGHERTY COUNTY, GEORGIA : OFFICER T. COUCH, : in his individual capacity, : OFFICER CHAD KIRKPATRICK, : in his individual capacity, : : Defendants. : : | CASE NO.:  1:15-CV-38 (LJA) |

## ORDER

Defendants Dougherty County, Georgia ("Dougherty County"), Officer T. Couch ("Officer Couch"), and Officer Chad Kirkpatrick ("Officer Kirkpatrick") have moved for summary judgment on Plaintiffs Janice Jenkins' and Tyrone Sutton, Jr.'s Section 1983 and state law claims arising out of their arrest in 2012. (Doc. 5.) For the following reasons, the Defendants' Motion is **GRANTED**.

## BACKGROUND

On September 28, 2012, the Albany 911 Communications Department received two 911 emergency calls.[1] The first call was made from Eddie Chastain's cell phone and the second was made from Chastain's house phone. During the first call, the 911 dispatcher heard a male arguing with another male over money before the call was abruptly

---

[1] The relevant facts are derived from the Complaint (Doc. 1), Defendants' Answer to the Complaint (Doc. 3), Defendants' Statement of Material Facts (Doc. 5-1); Plaintiffs' Response to Defendants' Statement of Material Facts (Doc. 14), Plaintiffs' Statement of Material Facts (Doc. 15), and the record in this case. Where relevant, the factual summary also contains undisputed and disputed facts derived from the pleadings, the discovery and disclosure materials on file, and any affidavits, all of which are construed in the light most favorable to Plaintiff as the nonmoving party. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

disconnected. During the second call, Chastain informed the dispatcher that a man had burst into his home, pointed a gun at him, took his cell phone, and threatened to kill him. Chastain said the intruder was accompanied by a male and a female.

In response to the 911 calls, several Dougherty County Police Officers were dispatched to Chastain's home, including Officer Couch. Upon arriving, Chastain and his companion, Maggie Tollefson, informed the officers that Derrick Bush had forced his way into his home, and that he was followed by Plaintiff Sutton. Chastain and Tollefson also stated that an unknown female remained outside the home during the altercation. Thereafter, the officers located Plaintiff Sutton's car near Chastain's home, with the hood of the car still warm. Officer Couch saw Plaintiff Sutton leaving a shed from behind the house where the car was located and ordered Plaintiff Sutton to the ground to be arrested. Another officer arrested Plaintiff Jenkins, who was intoxicated and under the influence of marijuana. Plaintiff Sutton admitted that he and Plaintiff Jenkins had accompanied Bush to Chastain's home, but that he never went inside the home.

After being handcuffed, Plaintiff Jenkins told Officer Couch that the handcuffs were too tight around her wrists. (Doc. 17-3 at 31:17-24.) Officer Couch informed her that she would not be handcuffed long, and that the handcuffs would be removed once she was at the jail. (*Id.*) Other than the fact that the handcuffs were uncomfortably tight, Plaintiff Jenkins did not experience any problems or sustain any injuries from them. (*Id.* at 32:2-5.)

Plaintiffs were subsequently taken into custody and charged with armed robbery. Plaintiff Sutton was also charged with possession of cocaine after a bag of crack cocaine was found in his sock. On October 4, 2012, Bush turned himself in and denied the allegations made against him in connection with the altercation with Chastain. Bush did, however, admit that he and Plaintiff Sutton went to Chastain's home to collect money Chastain purportedly owed to him.

On October 5, 2012, Chastain was interviewed after certain aspects of his story were called into question. After the interview, Chastain was arrested on an unrelated warrant from Dodge County. On October 8, 2012, Chastain was again interviewed and admitted that his statements in connection with the arrest of Plaintiffs were misleading. Consequently, the

armed robbery charges against Plaintiffs were dismissed, and Chastain was charged with falsely reporting a crime and giving false statements and writings.

On June 28, 2013, Plaintiff commenced an action in the Superior Court of Dougherty County, asserting claims against Dougherty County, Officer Couch, Defendant Kirkpatrick, the Dougherty County Police Chief, and unnamed "John Doe" defendants. On July 22, 2013, the defendants in that action removed the case to this Court. *See Jenkins v. Dougherty Cty.*, No. 1:13-CV-124 (M.D. Ga.). With the consent of the defendants, Plaintiffs subsequently moved to dismiss that action without prejudice under the condition that no additional discovery would occur and that the discovery conducted in that action would be transferred to this action. On August 15, 2014, the Court granted Plaintiffs' motion and dismissed the case.

On February 12, 2015, Plaintiffs commenced this action, asserting federal constitutional tort claims, pursuant to 42 U.S.C. § 1983, for arrest without probable cause and use of excessive force as well as various state law claims. (Doc. 1.) The allegations in the Complaint largely mirror those asserted in the prior action, with a few exceptions. Notably, Plaintiffs abandoned their claims against the Dougherty County Police Chief and the unnamed "John Doe" Defendants. In addition, although Defendant Kirlpatrick remains listed as a defendant in this case, Plaintiffs omitted the allegations that were previously asserted against him. On April 18, 2015, Defendants moved for summary judgment on all of Plaintiffs' claims. On June 1, 2015, Plaintiffs filed their response and, on July 13, 2015, Defendants filed their reply.

## **SUMMARY JUDGMENT STANDARD**

Federal Rule of Civil Procedure 56 allows a party to move for summary judgment at any time. Fed. R. Civ. P. 56(b). "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Maddox v. Stephens*, 727 F.3d 1109, 1118 (11th Cir. 2013). "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Grimes v.*

*Miami Dade Cnty.*, 552 F. App'x 902, 904 (11th Cir. 2014) (citing *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000)). "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the initial burden of showing, by reference to the record, that there is no genuine issue of material fact. *See Celotex*, 477 U.S. at 323 (1986); *Barreto v. Davie Marketplace, LLC*, 331 F. App'x 672, 673 (11th Cir. 2009). The movant can meet this burden by presenting evidence showing there is no genuine dispute of material fact, or by demonstrating that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *See Celotex*, 477 U.S. at 322-24. Once the movant has met its burden, the nonmoving party is required "to go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than summarily deny the allegations or show that there is some metaphysical doubt as to the material facts." *Matsuhita*, 475 U.S. at 586 (citations and internal quotations omitted). Instead, the nonmovant must point to evidence in the record that would be admissible at trial. *See Jones v. UPS Ground Freight*, 683 F.3d 1283, 1294 (11th Cir. 2012) (noting that hearsay may be considered on a motion for summary judgment only if it "could be reduced to admissible evidence at trial or reduced to admissible form") (quotation omitted). Such evidence may include affidavits or declarations that are based on personal knowledge of the affiant or declarant. *See* Fed. R. Civ. P. 56(c)(4).

On a motion for summary judgment, the Court must view all evidence and factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict in its favor. *See Celotex*, 477 U.S. at 322-23; *Allen*, 121 F.3d at 646. The Court, however, must grant summary

judgment if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

Local Rule 56 requires that the movant attach to its motion for summary judgment a separate and concise statement of material facts to which the movant contends there is no genuine issue to be tried. M.D. Ga. L.R. 56. The non-movant must then respond "to each of the movant's numbered material facts." *Id.* "All material facts contained in the movant's statement which are not specifically controverted by specific citation to particular parts of materials in the record shall be deemed to have been admitted, unless otherwise inappropriate." *Id.* Moreover, the "respondent to a motion for summary judgment may not assert insufficient knowledge to admit or deny a material fact asserted by the movant unless the respondent has complied with the provisions of Rule 56(d) of the Federal Rules of Civil Procedure." *Id.*

Plaintiffs' Response to Defendants' Statements of Material Facts largely consists of unsupported and conclusory assertions without any citation to the record and Plaintiffs' Statement of Material Facts simply states the relevant legal issues. (*See* Docs. 14, 15.) Thus, Plaintiffs have failed to comply with Local Rule 56. The Court, however, "cannot grant a motion for summary judgment based on default or as a sanction for failure to properly respond." *United States v. Delbridge*, No. 06-CV-110, 2008 WL 1869867, at *3 (M.D. Ga. Feb. 22, 2008) (citing *Trustees of Cent. Pension Fund of Int'l Union of Operating Engineers & Participating Employers v. Wolf Crane Serv., Inc.*, 374 F.3d 1035, 1040 (11th Cir. 2004)). Instead, the Court must undertake an independent review of "the evidentiary materials submitted in support of the motion" to ensure that the Defendants have met their burden of demonstrating the absence of a genuine issue of material fact. *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004); *see also Delbridge*, 2008 WL 1869867, at *3 (finding that the "Court must make an independent review of the record," even if the non-movant fails to respond to the statement of material facts).

## **DISCUSSION**

### **I.   Federal Claims**

Plaintiffs have asserted Section 1983 claims against Officer Couch, Officer Kirkpatrick, and Dougherty County. "To prevail on a § 1983 claim, a plaintiff must show that: (1) the defendant deprived him of a right secured by the Constitution or federal law; and (2) the deprivation occurred under color of state law." *Hayes v. Sec'y, Florida Dep't of Children & Families*, 563 F. App'x 701, 702-03 (11th Cir. 2014) (citing *Arrington v. Cobb Cty.*, 139 F.3d 865, 872 (11th Cir.1998)). Plaintiffs have made no such showing here.

### **A.   Officer Couch**

Plaintiffs each bring Section 1983 claims against Officer Couch for arrest without probable cause. In addition, Plaintiff Jenkins has asserted that Officer Couch used excessive force by not loosening her handcuffs after she complained that they were too tight. As discussed more fully below, Plaintiffs have failed to establish that their constitutional rights were violated such that Officer Couch should be liable under Section 1983.

#### *i.   False Arrest*

It is well established that "[a] warrantless arrest without probable cause violates the Fourth Amendment and forms a basis for a section 1983 claim." *Ortega v. Christian*, 85 F.3d 1521, 1525 (11th Cir. 1996). "The existence of probable cause at the time of arrest, however, constitutes an absolute bar to a section 1983 action for false arrest." *Kingsland v. City of Miami*, 382 F.3d 1220, 1226 (11th Cir. 2004) (citation omitted). "Probable cause exists where the facts and circumstances within the collective knowledge of the law enforcement officials, of which they had reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe an offense has been or is being committed." *United States v. Jimenez*, 780 F.2d 975, 978 (11th Cir. 1986) (internal quotation marks and citations omitted). "This probable cause standard is practical and non-technical, applied in a specific factual context and evaluated using the totality of the circumstances." *Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1137 (11th Cir. 2007).

"Intertwined with the question of probable cause is the issue of qualified immunity." *Von Stein v. Brescher*, 904 F.2d 572, 578 (11th Cir. 1990). "Qualified immunity protects

government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Dalrymple v. Reno*, 334 F.3d 991, 994 (11th Cir. 2003) (citing *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). "To receive qualified immunity, 'the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'" *Kingsland*, 382 F.3d at (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)). "An officer acts within the scope of his discretionary authority when his conduct is undertaken pursuant to the performance of his official duties." *Clark v. City of Atlanta*, 544 F. App'x 848, 852 (11th Cir. 2013) (citing *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998)). Courts consider "whether the government employee was (a) pursuing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were in his power to utilize." *Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004).

It is undisputed that Officer Couch was acting within the scope of his discretionary authority when he arrested Plaintiff Sutton. It is also undisputed that Plaintiff Couch did not arrest Plaintiff Jenkins. Although "a non-arresting officer who instigates or causes an unlawful arrest can still be liable under the Fourth Amendment," *Jordan v. Mosley*, 487 F.3d 1350, 1354 (11th Cir. 2007), Plaintiff Jenkins has offered no argument or evidence demonstrating that Officer Couch instigated or caused her arrest. Nevertheless, even if she had, Plaintiff Jenkins claim would still fail because she cannot establish a violation of her constitutionals rights.

"Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Kingsland*, 382 F.3d at 1232. Whether a plaintiff meets this burden involves two discrete inquiries. First, the Court asks "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citing *Saucier v. Katz*, 533 U.S. 194 (2001)). As noted above, an arrest without probable cause violates the Fourth Amendment. *Ortega*, 85 F.3d at 1525. Second, the Court asks "whether

the right at issue was 'clearly established' at the time of defendant's alleged misconduct."[2] *Pearson*, 555 U.S. at 232. In wrongful arrest cases, the Eleventh Circuit has "defined the 'clearly-established' prong as an 'arguable probable cause' inquiry." *Moran v. Cameron*, 362 F. App'x 88, 93 (11th Cir. 2010) (citations omitted); *Poulakis v. Rogers*, 341 F. App'x 523, 526 (11th Cir. 2009). Thus, "[t]o receive qualified immunity, an officer need not have actual probable cause, but only 'arguable' probable cause." *Holmes v. Kucynda*, 321 F.3d 1069, 1079 (11th Cir. 2003). Arguable probable cause exists where "reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest Plaintiff." *Kingsland*, 382 F.3d at 1232 (quotation marks omitted). The standard is an objective one and does not include an inquiry into the officer's subjective intent or beliefs. *Rushing v. Parker*, 599 F.3d 1263, 1266 (11th Cir. 2010); *Kingsland*, 382 F.3d at 1231 ("The essence of qualified immunity analysis is the public official's objective reasonableness, regardless of his underlying intent or motivation.").

"Whether an arresting officer possesses probable cause or arguable probable cause naturally depends on the elements of the alleged crime and the operative fact pattern." *Skop*, 485 F.3d at 1137 (internal citation omitted). Showing arguable probable cause does not, however, require proving every element of a crime. *Scarbrough v. Myles*, 245 F.3d 1299, 1302-03 (11th Cir. 2001). If the arresting officer had arguable probable cause to arrest for any offense, qualified immunity will apply. *Skop*, 485 F.3d at 1138; *Lee v. Ferraro*, 284 F.3d 1188, 1195-96 (11th Cir. 2002) (noting that "the validity of an arrest does not turn on the offense announced by the officer at the time of the arrest") (internal citations and quotations omitted).

Pursuant to O.C.G.A. § 16-2-20, "[e]very person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime." A person is "concerned in the commission of a crime" if he "intentionally aids or abets in the commission of the crime." O.C .G.A. § 16-2-20(b)(3). Furthermore, O.C.G.A. § 16-2-21 provides that:

---

[2] The Court may consider either of these factors in the sequence it deems appropriate. *Pearson*, 555 U.S. at 236.

8

> Any party to a crime who did not directly commit the crime may be indicted, tried, convicted, and punished for commission of the crime upon proof that the crime was committed and that he was a party thereto, although the person claimed to have directly committed the crime has not been prosecuted or convicted, has been convicted of a different crime or degree of crime, or is not amenable to justice or has been acquitted.

"Under these laws, one who intentionally aids and abets a burglar by, for example, driving a getaway car, is himself guilty of burglary." *Sanford v. Hart*, No. 12-CV-508, 2014 WL 5664262, at *12 (M.D. Ga. Nov. 4, 2014) (citing *Dorsey v. State*, 676 S.E.2d 890 (Ga. Ct. App. 2009)). "Whether a person is a party to a crime may be inferred from that person's presence, companionship, and conduct before, during and after the crime." *Marshall v. State*, 275 Ga. 571 S.E.2d 761, 764 (2002)

It is undisputed that Plaintiffs Sutton and Jenkins accompanied Bush to Chastain's home in Plaintiff Sutton's car. It is also undisputed that Chastain told the officers who responded to his 911 call, including Officer Couch, that Bush, accompanied by Plaintiff Sutton and an unknown female, burst into his home, pointed a gun at him, took his cell phone, and threatened to kill him. Chastain's version of events was corroborated by his companion, Tollefson. "Generally, an officer is entitled to rely on a victim's criminal complaint as support for probable cause." *Rankin v. Evans*, 133 F.3d 1425, 1441 (11th Cir. 1998); *see also Hendricks v. Sheriff, Collier Cty., Florida*, 492 F. App'x 90, 93-94 (11th Cir. 2012*).* Plaintiffs have offered no evidence suggesting that, at the time of their arrest, Officer Couch should have discredited Chastain and Tollefson's complaints or that he knew that their statements were possibly fabricated. That Chastain's credibility and version of events was later called into question does not alter the probable cause inquiry. What is relevant "is the information known to the defendant officers or officials at the time of their conduct, not the facts known to the plaintiff then or those known to a court later." *Jones v. Cannon*, 174 F.3d 1271, 1283 (11th Cir. 1999). At the time of Plaintiffs' arrest, a reasonable officer possessing the same information as Officer Couch could have believed that Plaintiffs Sutton and Jenkins were involved in the commission of a crime. Accordingly, Defendant Couch is entitled to summary judgment on Plaintiffs' Section 1983 claims for false arrest.

### ii. *Excessive Force*

"The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest." *Lee v. Ferraro*, 284 F.3d 1188, 1197 (11th Cir. 2002). "Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989). "This circuit has made clear that some use of force by a police officer when making a custodial arrest is necessary and altogether lawful, regardless of the severity of the alleged offense." *Durruthy v. Pastor*, 351 F.3d 1080, 1094 (11th Cir. 2003). "Because a police officer is entitled to use some force to arrest a suspect, 'the application of *de minimis* force, without more, will not support a claim for excessive force in violation of the Fourth Amendment.'" *Myers v. Bowman*, 713 F.3d 1319, 1327-28 (11th Cir. 2013) (quoting *Nolin v. Isbell*, 207 F.3d 1253, 1257 (11th Cir. 2000)).

The record reflects that, after being arrested by another officer, Plaintiff Jenkins complained to Officer Couch that the handcuffs were too tight around her wrists. Officer Couch informed her that she would not be handcuffed long, and that the handcuffs would be removed once she was at the jail. It is undisputed that Plaintiff Jenkins did not experience any problems or sustain any injuries from the handcuffs, and that the handcuffs were indeed removed shortly after she arrived at the jail. Under these circumstances, Officer Couch used a lawful amount of *de minimis* of force. *See Gold v. City of Miami*, 121 F.3d 1442, 1446-47 (11th Cir. 1997). Accordingly, Officer Couch is entitled to summary judgment for Plaintiff Jenkins' excessive force claim.

### B. Officer Kirkpatrick

Plaintiffs contend that Officer Kirkpatrick violated their rights by providing "the media information about the Plaintiffs being charged with a number of Felony offenses and then when he learned on October 4, 2012 that the charges were not true, he failed to correct the report which caused damages to the Plaintiffs." (Doc. 13 at 10.) Plaintiffs made similar allegations against Officer Kirkpatrick in their original action. However, as noted above, Plaintiffs omitted these allegations in their Complaint in this action. (*See* Doc. 1.)

"A plaintiff may not amend her complaint through argument in a brief opposing summary judgment." *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004). Rather, "[a]t the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed. R. Civ. P. 15(a)." *Id.* Accordingly, because Plaintiffs did not include these allegations in their Complaint in this action, their claims against Officer Kirkpatrick are not properly before the Court. Accordingly, Officer Kirkpatrick is entitled to summary judgment on Plaintiffs' Section 1983 claims.

### C.     Dougherty County

It is well-settled that "[m]unicipalities and local government units cannot be found liable under § 1983 under a *respondeat superior* or vicarious liability theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). "Instead, to impose § 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation. *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). "A plaintiff . . . has two methods by which to establish a county's policy: identify either (1) an officially promulgated county policy or (2) an unofficial custom or practice of the county shown through the repeated acts of a final policymaker for the county." *Grech v. Clayton Cty., Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003) (citations omitted). "Under either avenue, a plaintiff (1) must show that the local governmental entity, here the county, has authority and responsibility over the governmental function in issue and (2) must identify those officials who speak with final policymaking authority for that local governmental entity concerning the act alleged to have caused the particular constitutional violation in issue." *Id.* at 1330.

Because Plaintiffs have not shown that their constitutional rights were violated, they cannot establish the first prong in *McDowell*. Moreover, even if they could establish that their constitutional rights were violated, Plaintiffs have not shown that Dougherty County had a policy or custom that caused the alleged violations. Plaintiffs' conclusory allegations to the contrary are insufficient to establish that Dougherty County is liable under Section 1983. *See Myers*, 713 F.3d at 1327 (finding that plaintiff failed to create a genuine issue of material fact

based on "speculation and conclusory allegations" reasoning that "this court has consistently held that conclusory allegations without specific supporting facts have no probative value"). Accordingly, Dougherty County is entitled to summary judgment on Plaintiffs' Section 1983 claims.

## II. State Claims

Once a plaintiff's federal claims are dismissed, "there remains no independent original federal jurisdiction to support the Court's exercise of supplemental jurisdiction over the state claims against Defendant." *Baggett v. First Nat. Bank of Gainesville*, 117 F.3d 1342, 1352 (11th Cir. 1997). Pursuant to 28 U.S.C. § 1367(c)(3), the Court may decline to exercise supplemental jurisdiction over claims after it has dismissed all claims over which it has original jurisdiction. "The decision to exercise supplemental jurisdiction over pendant state claims rests within the discretion of the district court." *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088-89 (11th Cir. 2004). "Where § 1367(c) applies, considerations of judicial economy, convenience, fairness, and comity may influence the court's discretion to exercise supplemental jurisdiction." *Baggett*, 117 F.3d at 1353 (citing P*almer v. Hosp. Auth. of Randolph Cty.*, 22 F.3d 1559, 1569 (11th Cir.1994). The Eleventh Circuit has "encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial." *Raney*, 70 F.3d at 1089.

The state law claims asserted by Plaintiffs are dismissed to allow Plaintiffs to pursue their claims in a more appropriate forum. The state court is best equipped to research and rule on matters of state law, and comity would suggest that it should be allowed to do so. In addition, Section 1367(d) gives "the plaintiff at least 30 days to re-file in state court after a federal court declines to exercise supplemental jurisdiction," thereby removing "the principal reason for retaining a case in federal court when the federal claim belatedly disappears." *Personalized Media Commc'ns, LLC v. Scientific–Atlantic, Inc.*, 493 F. App'x 78, 82 n.1 (11th Cir. 2012); *see also. See* 28 U.S.C. § 1367(d) (providing that state law claims asserted in federal court along with "related" federal claims "shall be tolled while the claim is pending and for a period of 30 days after it is dismissed"). While it may be convenient for the Parties to continue litigating this case in this Court, neither judicial economy nor fairness to other

litigants support retaining jurisdiction over Plaintiffs' state law claims while delaying justice in other cases where the Court retains original jurisdiction. Accordingly, Plaintiffs' state law claims are dismissed without prejudice.

## CONCLUSION

In light on the forgoing, Defendants' Motion for Summary Judgment (Doc. 5) is **GRANTED**. Plaintiffs' Section 1983 claims are **DISMISSED with prejudice** and Plaintiffs' remaining state law claims are **DISMISSED without prejudice**.

**SO ORDERED,** this 31st day of March, 2016.

/s/ Leslie J. Abrams
**LESLIE J. ABRAMS, JUDGE**
**UNITED STATES DISTRICT COURT**